## DALLAS TRANSFER & TERMINAL WAREHOUSE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7046.

Circuit Court of Appeals, Fifth Circuit.

April 12, 1934.

Eustis Myres, of Dallas, Tex., for petitioner.

Frank J. Wideman, Asst. Atty., Gen., Sewall Key and Walter L. Barlow, Sp. Assts. to Atty. Gen. and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and Bruce A. Low, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The petitioner is a Texas corporation, engaged in the transfer and storage business. In 1924 it leased a unit of a warehouse building in Dallas, Tex., for a term of twenty years, beginning July 15, 1924, at a rental of $7,000 a month. In October, 1925, the petitioner owed its lessor $47,592.-57 for unpaid rental and other bills, and for that amount executed its note and gave as security a deed of trust conveying a parcel of real estate which was referred to as the Alamo street property, which was subject to a prior mortgage lien for $25,000 and interest thereon. The petitioner continued to fall behind in its payments to the lessor under the lease, with the results that on December 21, 1926, it owed the lessor $67,270.-61, on December 21, 1927, it owed the lessor $92,941.16, and on August 14, 1928, it owed the lessor $110,101.90. In August, 1928, petitioner was in no condition to pay the indebtedness and was insolvent. As of December 31, 1927, petitioner had assets valued at $152,470.16, and it owed to creditors $178,-941.01. Including its capital stock of $200,-000 in its liabilities, its deficit on that date was $226,470.85. During August, 1928, petitioner and the lessor started negotiations which in October, 1928, resulted in an agreement under which the petitioner conveyed to the lessor, subject to said $25,000 first mortgage, said Alamo street property (being all the real estate owned by petitioner), which at that time had a depreciated cost to petitioner of $39,513.42, and an appraised fair market value of $42,507.24; petitioner's equity in that property being valued at $17,-507.20; and the lessor canceled petitioner's then existing indebtedness to the lessor, and reduced the monthly rental under the lease to $5,000 a month until February 14, 1929, to $5,500 a month from February 14, 1929, until August 14, 1929, and thereafter to $6,000 a month until the termination of the lease. Petitioner's income tax return for the year 1928 showed a profit in forgiveness of indebtedness in that transaction of $91,794.79. The Commissioner of Internal Revenue corrected that amount, with the result of increasing it to $93,367.35, that sum being arrived at by deducting from the amount owing on September 30, 1928, by petitioner to the lessor, $107,880.79, the amount of $14,-513.42, that amount being the depreciated cost of the Alamo street property less the amount of the mortgage on it. The lessor credited on petitioner's indebtedness the appraised value of petitioner's equity in the Alamo street property, and charged the balance of that indebtedness off its books as a bad debt, and the amount so charged off was allowed as a loss to the lessor in the computation of its tax for the year 1928. In its income tax return for that year the lessor stated that if suit had been brought it would have resulted in putting petitioner out of business, and leaving a vacant 9-story building on the lessor's hands. The Commissioner

of Internal Revenue determined a deficiency of income tax against the petitioner for the year 1928 in a sum which was a result of treating the above-mentioned sum of $93,-367.35 as a gain, profit, or income received by petitioner in the year 1928. The petitioner sought a redetermination of that deficiency by the Board of Tax Appeals, and complained of the failure of the respondent to eliminate from petitioner's gross income an item of $91,794.79 erroneously returned as profit on a forgiveness of an indebtedness, and of respondent's action in adding to petitioner's gross income a further sum of $1,-572.56 as additional profit on said forgiveness. That board approved the action of the respondent. The matter is before us on petition for review.

It is plain that in September, 1928, the above-mentioned lease had resulted in burdening the petitioner with a debt of $107,880.77 to its lessor and rendering the petitioner insolvent, and that the lessor, for the purpose of enabling the petitioner to remain in business and to have a chance to pay the reduced future rental agreed upon, and also for the purpose of keeping the lessor's 9-story building from being vacant and unprofitable, accepted in part payment on the debt owing to it petitioner's equity in the Alamo street property at the appraised value of that equity, $17,507.20, and canceled the balance of that debt, charging it off as worthless. The transaction was not in form or substance a sale for $107,880.77 of property which had an appraised value of $17,-507.20. In effect the transaction was similar to what occurs in an insolvency or bankruptcy proceeding when, upon a debtor surrendering, for the benefit of his creditors, property insufficient in value to pay his debts, he is discharged from liability for his debts. This does not result in the debtor acquiring something of exchangeable value in addition to what he had before. There is a reduction or extinguishment of liabilities without any increase of assets. There is an absence of such a gain or profit as is required to come within the accepted definition of income. Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Merchants' L. & T. Co. v. Smietanka, 255 U. S. 509, 519, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305. It hardly would be contended that a discharged insolvent or

bankrupt receives taxable income in the amount by which his provable debts exceed the value of his surrendered assets. The income tax statute does not purport to treat as income what did not come within the meaning of that word before the statute was enacted. The instant case is substantially different from the case of United States v. Kirby Lumber Co., 284 U. S. 1, 52 S. Ct. 4, 76 L. Ed. 131, which was principally relied on by the Board of Tax Appeals for support of its conclusion that the canceled indebtedness in excess of the depreciated cost of the Alamo street property constituted income to the petitioner for the year 1928. In the last-mentioned case a corporation issued its bonds at par and in the same year repurchased some of them at less than par. The taxpayer's assets having been increased by the cash received for the bonds, by the repurchase of some of those bonds at less than par the taxpayer, to the extent of the difference between what it received for those bonds and what it paid in repurchasing them, had an asset which had ceased to be offset by any liability, with a result that after that transaction the taxpayer had greater assets than it had before. The decision (which was followed in Helvering, Commissioner, v. American Chicle Co., 54 S. Ct. 460, 78 L. Ed. ——) that the increase in clear assets so brought about constituted taxable income is not applicable to the facts of the instant case, as the cancellation of the respondent's past due debt to its lessor did not have the effect of making the respondent's assets greater than they were before that transaction occurred. Taxable income is not acquired by a transaction which does not result in the taxpayer getting or having anything he did not have before. Gain or profit is essential to the existence of taxable income. A transaction whereby nothing of exchangeable value comes to or is received by a taxpayer does not give rise to or create taxable income. Commissioner of Internal Revenue v. Rail Joint Co. (C. C. A.) 61 F.(2d) 751, 752; Bowers v. Kerbaugh-Empire Co., 271 U. S. 170, 46 S. Ct. 449, 70 L. Ed. 886; Burnet v. John F. Campbell Co., 60 App. D. C. 197, 50 F.(2d) 487.

The decision that the petitioner acquired taxable income as a result of the cancellation of its debt to its lessor was erroneous. The petition is granted, and the order under review is reversed.